Hinds County *v.* National Life Insurance Co.

[61 South. 164.]

Counties. *Bonds. Exercise of option to pay. Notice. Sufficiency. Ann. Code* 1902, *sections* 311-312. *Acts* 1900, *chapter* 125.

　County bonds issued under Code 1892, sections 311-312, as amended by Acts 1900, chapter 125, which makes bonds payable at any time after five years, at the option of the county, but does not provide for constructive notice to the bondholders of the exercise of such option, do not cease to bear interest until the bondholders have actual notice of an order of the board of supervisors for the payment of such bonds, though such order was issued and published.

Appeal from the circuit court of Hinds county.
Hon. W. A. Henry, Judge.

Suit by the National Life Insurance Company against Hinds county. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Williamson & Wells,* for appellant.

In the case of *Lake County Commissioners* v. *Graham,* U. S. Sup. Ct., 32 L. Ed. 1067, it is held as follows: "Nothing is better settled than this rule—that the purchaser of bonds, such as these, is held to know the constitutional provisions and the statutory restrictions bearing on the question of the authority to issue them; also the recitals of the bonds he buys."

The law under which these bonds were issued does not provide in terms for the redemption of the bonds at the end of five years nor prescribe any method therefor, though it does prescribe that if the county shall so elect the bonds are payable at the end of five years, and this it did; and this fact is expressed on the face of each bond,

and the purchaser took the bonds subject to this notice expressed on the face of the bonds. The bonds were payable at the county treasurer's office in the city of Jackson, and the undisputed fact is that the money was all of the time in the hands of the treasurer, at the place of payment, for the purpose of paying these bonds.

The only question is, did the county perform its obligation to any holder of the bonds by declaring its option to pay on the 7th day of February, 1910, and publishing notice thereof in the manner in which it did, and having money in readiness at the proper place to meet the payment of the bonds and interest when they should be presented for payment? Or does the law contemplate that, in addition, the county should have given personal notice of its election to pay the bonds to the holder?

At the time of the issuance of the bonds there was no statute prescribing the manner or method of exercising the option to pay the bonds, as section 332 of the Mississippi Code of 1906 was not then in force, and there was no similar statute prior to this section of the Code.

The appellee knew when it took the bonds that they were subject to the provision of payment at any time after five years, for this was plainly stated in the face of the bonds. It knew that the bonds possessed all of the qualities of commercial paper payable on their face to bearer, and as such, passed freely from hand to hand by mere delivery and entered into all of the channels of trade and commerce.

How was it then possible for the county of Hinds to know, when it made its election to pay, who held the bonds? Personal notice in such case would be practically impossible. Such construction of the contract would render the option to pay at the end of five years of no value whatever. On the other hand we say that the appellee took the bonds with full knowledge of the fact stated on their faces that the county reserved the right to pay them at any time after five years, and inasmuch as appellee took

the bonds with this notice and without exacting any specifications as to notice to him when the right to pay was to be exercised, it cannot now, with any justice or reason, contend that he would expect the county to give him actual notice without any notice whatever to the county, that it was the owner or holder of the bonds.

Under such a construction, the option plainly reserved by the county on the face of the bonds and authorized by the statute, would be of no value whatever.

Boards of supervisors under our system are courts of record and as such all of their acts and doings are made a matter of record. The election of the county of Hinds to pay these bonds on the 7th day of February, 1910, was made a matter of record on the minutes of the board and the order was duly published. The appellee was advised by the face of the bonds in its hands that it held the bonds subject to such election by the board of supervisors and that the election was liable to be made at any time after five years from the date of the bonds. The appellee knew by what authority the bonds had been issued, and knew where and by whom they were payable. The county had no means of knowing that the appellee owed or held the bonds. The appellee had two plain courses open to it to ascertain whether or not the county had exercised its option to pay, and to guard itself against the loss of interest, either by making direct inquiry of the clerk of the board of supervisors, or any local correspondent, or by leaving the bonds and coupons at the place of payment. Either of these courses was easy for the holder of the bonds, while to compel the county to seek out the holder of bonds payable to bearer, not yet due, transferrable by mere delivery from hand to hand, to give personal notice of the election to pay, we submit is unreasonable and would render the law under which the bonds were issued of no effect.

In the absence of any provision in the bond itself as to notice, and in the absence of any statute on the subject,

the county took the only practicable course open to it.  It passed the order making the election to pay with due formality and put it of record on the minutes of the court, and it published the order in the newspaper in which the regular official proceedings of the board were published. The notice was duly published in this official journal for full three weeks, which is the usual and statutory time for the publication of all legal notices.  It did not publish the notice in Montpelier, Vermont, for it had no reason to know or to believe that any of the bonds were held there. It did publish the notice in its regular official organ in the county and state where the bonds were payable.

The contract of the bonds, as is shown here, provides for the payment of the bonds at the option of the county after five years, which put the holder on full notice, and imposed something more on him than to pocket his bonds in a distant state, and wait to be run down to be served with personal notice.

A case upon allfours with this in every respect, and from the opinion in which liberal quotations are made in this brief is that of *Stewart* v. *Henry County,* 66 Fed. 127. We respectfully submit to the court that the reasoning of this strikingly similar case is unanswerable here.

If it be a correct legal proposition that the purchasers of county bonds are conclusively held to know the constitutional and statutory requirements of the law under which the bonds are issued, then the appellee is to be conclusively held to know the statutes passed by the legislature authorizing these bonds to be made payable at any time after five years at the option of the county.

In addition to this, the bonds themselves contain on their face information of the fact that in the issuance of these bonds, the county had availed itself of the authority conferred by law to make these bonds payable at the end of five years at the option of the county, and purchasers of the bonds must be conclusively held to have known that whatever action the county might take in the matter of

the exercise of its option to pay, would necessarily be taken by the board of supervisors of Hinds county.

It is the almost universal law that whatever is enough to excite attention or put the party on inquiry, is notice enough of everything to which the inquiry might have led. Sufficient information to lead to a fact is deemed sufficient to charge a party with knowledge of it.

As to the notice referred to above see: *Wailes* v. *Cooper,* 24 Miss. 228 and *Parker* v. *Foy & Forer,* 43 Miss. 260.

Stated somewhat differently, the rule is as follows: "It is a general rule that whatever puts a party on inquiry, amounts in judgment of law to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding." 29 Cyc. 1114.

Now, the purchaser of these bonds is conclusively held to know the authority, both constitutional and statutory under which they were issued, and is also bound by the recitals contained on the face of the bonds themselves. It is recited in the law authorizing the issuance of the bonds that the county has the legal right to issue the bonds payable after five years at the option of the county, and the purchaser, therefore, knew when he purchased the bonds that the county had chosen to reserve the right of payment after five years, because this reservation and the fact that this right had been duly exercised by the county, was plainly stipulated on the face of the bonds. The bonds are negotiable bonds payable to bearer, passing from hand to hand by mere delivery and there was no means by which the county could know who held the bonds or where they might be held in the markets of the world. They were as likely to be held by citizens of Hinds county as by the citizens of any other county in the state, or by citizens of other counties in other states. They were as likely to be held in Chicago or New York as in Montpelier, Vermont, or in the market of some foreign country. In

the construction of a contract, the facts and circumstances surrounding the transaction must be considered, and we submit that in a case like this, where the law authorized the payment of the bonds after five years from that date, and where this fact and reservation of right was plainly written in the face of the bonds themselves inquiry to ascertain the facts became the duty of the purchaser of the bonds, and something more is to be required of him than that he should pocket the bonds in a remote city in a distant state, and plead ignorance of the action of the constituted authorities in exercising the right to call and pay the bonds. It is utterly impracticable for the county to know who held the bonds or where they were held, but it was an easy matter for the holder of the bonds at any time, by simple inquiry of the clerk of the board of supervisors, either in writing or through some local correspondent, to have ascertained the facts, so that no loss of interest need have occurred. There is nothing in this case of concealment or of an ineffectual effort on the part of the bondholder to ascertain the facts, but it is the case of a purchaser of bonds, payable on their face after five years, who took the bonds with full notice of the fact, and although the bonds were payable to bearer he simply pockets them in a remote city in a distant state, and demands that the county should perform an impossibility by giving him personal notice, or actual notice of the fact that it had chosen to exercise its right to pay these bonds, in face of the fact that the action of the board was in due form, spread in full upon the records of the court and duly published in the official organ of the county for the full period of three weeks.

We did not understand the court below to hold that actual notice to the bondholder was necessary, but held that the notice given was not sufficient. The special plea sets forth that the order calling the bonds was duly passed by the board on January 6, 1910; that it was made a matter of record on the minutes, and that it was duly published

for three weeks in the Hinds County Gazette, a newspaper published and having a general circulation in Hinds county and also being the official organ of the board in which its official proceedings were usually and customarily published. The court held that this was not a sufficient notice or publication.

If not, why not? This publication was made in the official organ of the board of supervisors, in the county where the bonds were payable. The plea shows that it was a newspaper of general, not limited, circulation. Suppose the publication had been made in some newspaper published in New York? Then the complaint would still be made that the bondholder did not have actual notice or constructive notice and that it should have been published in Chicago, or New Orleans, or St. Louis, or Kalamazoo or Montpelier, Vermont.

The court will bear in mind that the county had no means of knowing by whom these bonds were held, or where. If the regular passing of the order and making it a part of the official proceedings of the board and the publication of it in the regular official organ of the board of supervisors was not sufficient notice, where will the court draw the line? It might as well be said at once that the provision of the law and the provision in the bonds making them payable at the end of five years from date was ineffectual and not binding upon the bondholder.

Legal notices of all kinds are effectual when published for a consecutive period of three weeks and hence the board published this notice just as other legal notices are required to be published. It will be noted that the period of time for this publication was the same as that afterwards fixed by the statute in section 332 of the Mississippi Code of 1906.

This section passed subsequently to the issuance of these bonds simply provides that publication of legal notice is necessary to call in bonds, and is only declaratory of the law as it already existed. The board of super-

visors did not undertake to call in these bonds without the publication of a legal notice. They complied with this statute, not because of the statute, but because of the law as it existed previous to the statute.

It seems to us that the rights of the county and the obligations of the bondholder have been ignored in the determination of the question involved.

In any view, the judgment of the court is erroneous in allowing interest at the rate of six per cent. per annum on the amount of the recovery, from Feb. 1, 1910. It will be noted that the interest coupons due Feb. 1, 1910, were duly paid upon presentation. No other interest coupons could have become due until Feb. 1, 1911, and when these were presented on Feb. 1, 1911, payment was refused and then it was that appellee was informed by actual notice that the bonds had been called for payment on Feb. 7, 1910. It was not until the March term, 1911, that demand was made upon the board of supervisors for the payment of these coupons and payment refused, so that, in any event appellee was not entitled to six per cent. interest on the coupons from Feb. 1, 1910. The coupons do not bear any interest, and they could not have been due until Feb. 1, 1911, and payment was not refused by the board of supervisors until the March term, 1911.

Section 311 of the Code of 1892 as amended by chapter 125 of the Laws of 1900 reads as follows: "Section 311: . . . may issue bonds for certain purposes; for the purposes of providing the county with a courthouse, jail and poorhouse, and for building bridges, and for refunding any outstanding bonded indebtedness of the county, the board of supervisors may issue bonds of the county to an amount which, added to all of its indebtedness, shall not exceed five per centum on the assessed value of the taxable property of the county, appearing on the assessment rolls of the preceding year, and which shall mature not later than twenty-five years from the date of their issuance, and bearing interest at a rate not exceeding

seven per centum per annum, payable annually or semi-annually as the board shall elect, and such bonds (provided the board shall so elect and state on the face of the bonds) shall be payable after five years, at the option of the county. And such bonds shall be lithographed with suitable devices to prevent counterfeiting, shall be in the sums of one hundred or five hundred dollars each, and shall be registered as they are issued; be numbered in a regular series from one upward; be signed by the president of the board and countersigned by the clerk, who shall impress the seal upon each bond as it is issued; and every such bond shall specify on its face the purpose for which it was issued and the total amount authorized to be issued, and each shall be made payable to a person by name, the purchaser followed by the words "or bearer," and the bonds so issued shall not be sold for less than their face value. The board shall annually levy a special tax to be used exclusively in paying the interest on such bonds and in providing a sinking fund for their redemption."

The question to be determined here is as to whether or not the county could avail itself of the provision of the law authorizing it to provide upon the face of the bonds that they should be payable after five years, and if so how could it be done and made effectual in any other way than by actual notice to the holders of the bonds, if at all. If actual notice was necessary, then this provision of the law was wholly ineffectual, as the bonds are required by the statute to be made payable to bearer, and the county was utterly without any means of knowledge who held them.

If constructive notice was all that was necessary, then we say that the county did all that could reasonably or legally be required of them when the board of supervisors exercised the option by a due and legal order on the county records and published the order in the official organ of the board in the county where the bonds were payable. There was no statute at that time providing

what notice should be required, and in the absence of a statute the board gave the usual and customary notice which is required in other legal proceedings in the courts of this state.

The designation of a place of payment in a bond imports a stipulation that its holder should have it at such place when due to receive payment and if the instrument be not lodged there, and the obligor is there at maturity with the necessary funds to pay it, he cannot be made responsible for any further costs of suit or interest. *Ward v. Smith* (U. S.), 7 Wall. 447.

Holding these bonds, payable on their face to bearer and payable on their face after five years at the option of the county, it behooved the holder to at least make some effort to ascertain the facts in the matter, and the least show of interest on its part, or the slightest inquiry would have developed the fact that the county was ready, willing and anxious to pay the bonds, and had the money on hand to pay them from and after Feb. 7, 1910, and had duly and solemnly passed an order to this effect and had duly and legally called upon the holder of the bonds to present the same for payment.

We respectfully submit that the judgment should have been for the appellant county, and that the cause should be reversed and judgment here in favor of Hinds county.

*Alexander & Alexander,* for appellee.

A right to call in bonds for redemption must be exercised in accordance with the statute or conditions in the bonds by which it is conferred. *Memphis* v. *Savings Bank,* 99 Tenn. 104, 28 Cyc. 1643.

There is no provision in the bonds for the method of call; in fact, the bonds do not provide for a call nor are they subject to call in the strict interpretation of that term, and same must be strictly construed against the obligor. Hence, that feature is eliminated. Therefore, even if the bonds were subject to call, it must have been exercised in accordance with the statute on the subject.

Admitting for the present that section 332 of the 1906 Code is applicable to the case at bar, it constitutes the only statute in this state providing for the call of bonds. It provides, *inter alia res*: ''Such publication or posting shall be notice to all bondholders of the order calling in the bonds, and the interest on the bonds shall cease at the time designated in the order, on proof of publication or posting being made in the chancery clerk's office.''

It is evident that the board endeavored to comply with this section, and it is also quite apparent that in accordance with its terms the order was duly passed and publication thereof made prior to the date specified in order for the payment of the bonds. It will be noted in passing, however, that the order and also the published notice expressed the desire to exercise its option to retire thirty-six of said bonds numbered 21 to 57 inclusive on or before the 7th day of February 1st, and that 21 to 57 inclusive would be thirty-seven and not thirty-six, and in these respects the order and notice is defective. Section 332 of the 1906 Code was not complied with.

It is unnecessary to cite authorities on the general proposition that a statute providing for constructive notice when property rights are thereby intended to be precluded must be strictly construed and against the giver of the notice. Furthermore, every act necessary to complete the notice must affirmatively appear to have been done in the mode prescribed by the statute. 29 Cyc. 1122; *Gibney* v. *Crawford,* 51 Ark. 34; *Magoffin* v. *Mandaville,* 28 Miss. 354; *Payne* v. *Young,* 8 N. Y. 158; *Settlemyer* v. *Sullivan,* 97 U. S. 444; *Crisell* v. *Pulaski County,* 10 Fed. 891.

There was no actual notice. This is admitted, and hence eliminated. It appears, however, that in the attempt to charge appellee with constructive notice under the statute that every act called for by the terms of section 332 were complied with, with the exceptions above noted, except that no proof of publication was made in the

chancery clerk's office of such publication. It is true that there appears in the record a proof of publication dated February 20, 1910, and filed August 18, 1911, but this proof was not filed until the day that the suit was filed, and about a year and six months after the time it should have been filed. More than this, it appears that even this proof of publication was filed in the circuit court and not in the chancery court, being so endorsed by E. D. Fondren, clerk of said court. Of course, this proof of publication is not effective and admittedly is eliminated from consideration. Clearly, then, under the statute before appellee could have, under any attitude of the case, been charged with any notice, this proof was required to be made. It was not made; therefore, there was no notice.

It is contended, however that under the provisions of paragraph 531 of the 1906 Code that the newspapers containing the publications were bound in volumes and deposited in the chancery clerk's office at Raymond in the second district of Hinds county, and that this sufficiently complied with the statute. We cannot agree with counsel. "Making proof of publication" means everything that the term implies, proof of publication by evidence offered according to law. In the absence of special statute varying the common law rule, oral and documentary evidence under oath would be required to be offered before the clerk of the court; but under section 1980 of the 1906 Code it is provided: "The publication of any notice in a newspaper, when required by law or by the order of the court, may be proved by a production of a copy of the notice, with the affidavit of the printer, publisher, clerk or superintendent of the newspaper, specifying the respective numbers and dates of the newspaper in which publication was made; and such affidavit shall be evidence."

This statute is in derogation of the common law and calls for a strict interpretation. It appears in the chap-

ter on evidence, which was the law in existence at the time of the incorporation of section 332 in the Code on the subject; and it is quite clear that section 332 has reference to section 1980, and therefore they must be taken together.

There has been no compliance with section 332 as to the proof of publication, and such has not been made. The section has no reference to section 531 and could not have. It is a mere coincidence that the paper containing the publication was the one designated under section 531. Under the varying latitude provided for such publication and posting and the discretion under the statute for filing the papers in the clerk's office without any specific paper being designated for such filing, and especially in the absence of the same paper being legally designated for all official publications of this kind, were the contention of appellant correct, it can be readily seen that infinite confusion and misunderstanding would result. Section 531 appears under the chapter on chancery courts, and has to do with such courts and its proceedings.

It will be noted in passing that the order was in the first district, the bonds were to cover first district courthouse and jail bonds, and the paper was published in the second district and filed in the chancery clerk's office in the second district; therefore the proceedings in the first district or in the second district stood incomplete.

Therefore, we conclude that the provisions of the statute not having been followed in one particular the whole *modus operandi* leading up to the attempted call was therefore rendered a nullity and was void.

"In proceedings for calling in county warrants the statutory authority under which the county court acts must be strictly pursued; and, unless notice of the order making the call is given and proved in the manner prescribed by the statute, the order is a nullity as to all warrants not presented in obedience to the call." *Gibney* v. *Crawford,* 51 Ark. 34.

Therefore, we submit appellee cannot be charged with constructive notice under section 332 of the Code. Sec-

tion 332 has no application to these bonds.   The bonds were issued in 1902 under the provisions of section 311 of the Code of 1892.   This section was repealed in 1906 by section 331 of the Code of 1906.   The statutes differ on the subject of the call.   Section 332 refers specifically to section 331:

"Whenever the board of supervisors shall desire to call in any bonds, as provided for by the provisions of the above section"—referring to 331 just preceding 332 in the Code.   Therefore, section 331, which provides for the issuance of bonds and their call, could have no reference to the bonds in question.   Section 332 could not be retroactive in any event.   Such a construction would be unconstitutional under article 1, section 10 of the United States Constitution:   "No state shall pass  .  .  .  any law impairing the obligation of contracts;" and it has been held that it is immaterial how much it is impaired; the slightest impairment being sufficient.   Therefore, section 332 is a nullity so far as the bonds in question are concerned; and there stands no statutory provision for the call of these bonds.   Evidently this reasoning was not in the mind of the board at the time of the attempted publication of the notice, as it is evident it was their design to follow this statute, but what the board intended to do or how innocent they were in doing it is irrelevant.

The appellee cannot be charged with constructive notice independent of statute.

It is argued most earnestly by appellant's counsel, and at first blush not without some apparent foundation, for the logical conclusions reached that even though appellee had no actual notice of the desire of the board to exercise its option, yet the court must charge it constructively with knowledge of such intent; 1st, because the bonds themselves provided for payment after five years; and 2nd, because the minutes of the board, all public records, and the board of supervisors being in the nature of a court in Mississippi that everyone everywhere is charged with knowledge of its official acts.

It will be noted that the bonds provided for payment and not for redemption or call. Payment contemplates that some tender must be made and that notice of an intention to pay must be brought home (as will be more fully discussed hereinafter). Therefore, we fail to see how appellee could have been charged with the duty of doing some affirmative act by keeping constantly in touch with the board to ascertain what their intentions were with reference to the bonds when the duty was upon the board itself to act affirmatively and to notify the holder of the bonds of its intention. Notice cannot be predicated on a duty where a broad duty has been violated by the party attempting to charge him with notice. Everything was done which a reasonable person could be expected to do, and the board clearly has violated a greater duty to appellee than it could have been expected to perform. When the bonds in 1910 were sent forward for collection a simple inquiry would have elicited the name and address of the holder of bonds, and more than this, although it does not appear of record, and we mention it because we know that opposing counsel will not deny it, that the envelopes in which the coupons for collections are required by all banks to state the names of the forwarder of the coupons, the amount, etc. More than this, it will not be denied that at least two or three distinct letters were written to the county treasurer after February 1, 1910, making inquiry about the bonds. We simply mention these facts because they were facts within the knowledge of opposing counsel, and not that we consider them even relevant to the controversy presented to this court. This paragraph, when taken in connection with the citations which are to follow, will be complete.

The supervisors' minutes are not constructive notice, and appellee is not chargeable therewith. At the time these bonds were attempted to be called there was no provision of law relating thereto. Therefore, the bonds could not be called by constructive notice, and all of the pro-

ceedings of the board were absolutely without effect, were an attempt to follow a statute having no application whatever to these bonds, and simply because notice of trustees' sales, sheriffs' sales, etc., are provided to be published no such custom would thereby be established for call of bonds and clearly the deduction was unwarranted and a mistake on the part of the board. Under the statute providing for publication and setting out the method of so advertising the statute recites that where proof of publication is made in cases provided by law that certain steps shall be complied with. A wholly unauthorized recording is not notice. 12 Mich. 431; 69 Iowa, 53; 49 Mich. 232; 9 Ga. 440.

"The publication of an advertisement of unauthorized notice in a newspaper cannot be considered as affecting a subscriber with notice of its contents, in the absence of proof that he actually saw the advertisement." *Beltzhoover* v. *Blackstock*, 27 Am. Dec. 330; *Yocum* v. *Norice*, 13 N. H. 106; *Clark* v. *Ricker*, 14 N. H. 44.

In the absence of a statute actual notice must be brought home to appellee of the option to pay the bonds.

Appellant's counsel devotes most of his brief to an argument of the injustice of requiring the board of supervisors to give actual notice to the holder of the bonds. His reasoning is adroit, but without application to this case. The court cannot make laws to suit the convenience of anyone. Its duty is to construct and apply the law already enacted. We grant that the statute leaves appellant in a rather awkward attitude, and the statute providing for call of the bonds under which they were issued is thereby rendered to some extent possibly inoperative, but the courts cannot supply discrepancies of the legislature. It is true that municipal and county bonds are frequently held by various and sundry parties scattered throughout the country, but it is equally true that the annual coupons regularly come forward for collection, and an inquiry by the board of the bank forwarding same would quickly

elicit the name and address of the owner of the bonds as has been set out; but even if this were not true, and even if the option provided by statute to call the bonds should be rendered inoperative, as a matter of practical operation by the dereliction of the legislature itself and misfortune of the county who issues the bonds and of no one else, the bonds cannot rise above the dignity of the law.

There is no special magic about a bond of a county which renders it any different in its operation from a county warrant, a railroad bond, or a personal obligation. It is simply a note carrying a promise to pay on a specific date and providing for interest, in the absence of special statutory provisions. *Bailey* v. *Buchannan County*, 115 N. Y. 297; *Allerton School District* v. *Derr*, 115 Pa. St. 439; *Williamson* v. *Farson*, 199 Ill. 71.

It is also important to bear in mind that the bonds provided for payment and not for call or redemption. There is quite a difference in the terms and the difference must be clearly defined as between the parties to this suit. Payment means some action on the part of the obligor himself, charging him with a duty to pay. A call means a charging of some duty of the obligee to comply with the will of the obligor. Therefore, in order to pay an obligation within the debtor's sole option tender must be made. These bonds do not differ under the law applicable to the case from a simple note payable on demand. So, we assert with confidence that in the absence of a statute the board of supervisors must have brought home to appellee actual notice of its option to pay the bonds.

In *Berkley* v. *Board of Comrs. Pueblo County*, 110 Pac. 197, plaintiff bought bonds in 1874 and collected no coupons or interest after May 1, 1887; all coupons were presented for payment in January, 1908. The county had the option to pay after ten years from date, but gave plaintiff no actual notice. The court said: "It is true the option was with the county to pay at the expiration of ten years, but in order to exercise that option personal

notice must have been brought home to the bondholder of its election so to do. There is neither claim nor pretense that this was done, and, in the absence of such personal notice, an attempt to foreclose plaintiff from his continuing interest is futile.''

There is no distinction between the relation of bondholders and debtors under the bonds after maturity and nonpayment of the bonds and after a call without notice.

''Can mere readiness to pay a debt excuse from payment of the interest? Certainly not; a legal tender will stop interest, and if the creditor be not at hand a *bona fide* effort to find him for the purposes of tender and payment ought, I should think, be submitted to a jury as a material fact bearing on continued liability for interest. But possession of the means with disposition to pay which is all that readiness can import, is not alone a fact to be submitted to the jury.'' *Hummel* v. *Brown,* 24 Pa. St. 310.

In *Read* v. *Buffalo,* 74 N. Y. 463, the court said: ''Defendant in 1869 and 1870 through its proper officers issued certain orders or warrants upon its treasurer, payable when collected or realized from tax sales for a local improvement, with interest three months from date. The necessary funds to pay the orders were collected, and subsequently defendant's common council passed a resolution that after a certain date interest on the orders should cease, and the treasurer published notice thereof in the official city newspaper. When the orders were presented the treasurer refused to pay interest after the date specified in the resolution, but offered to pay the principal sum with interest up to that time, which plaintiff declined to accept. Plaintiff was justified in refusing to accept the offer, and defendant was liable for the full interest; that the resolution and publication of notice in the absence of any proof that the notice came to his knowledge did not change the obligation of defendant.''

It was also held in *Reed* v. *Buffalo, supra,* that the provisions of the amendment (Sec. 9, chap. 828, Laws 1872)

authorizing it to stop interest on such warrants by giving notice in the official paper, did not apply to the warrants in question; that it was prospective and only applied to warrants issued after its passage.

*County of Williamson* v. *Farson, Leach & Co.*, 199 Ill. 71, is a well-considered case. The court said: "The bonds in question were negotiable interest bearing securities long past due, and while outstanding continued to draw interest. Being due, the plaintiff on error had the right at any time to pay them upon reasonable notice to the holders thereof; but a notice published three times within six days prior to February 1, 1895, it is clear would not be reasonable notice and would not stop the interest on that date unless the holders of the bonds had actual notice of such call, even though the money was on deposit at the place where it was stated in the call the bonds would be paid (citing *Read* v. *Buffalo*). There is no evidence in this record that any of the holders of the thirty-nine bonds received notice of the call prior to July 1, 1895, and if they received no notice of such call, they were not bound to present their bonds for payment on or before February 1, 1895, or as a penalty of forfeit the interest thereon."

We respectfully submit that *Morpan* v. *U. S.*, cited by defendant's attorneys, has no bearing on this case, especially with reference to the unconstitutionality of the statute.

*Stewart* v. *Henry County*, 66 Fed. 127, also cited by defendant, is the only case in all the books which announces such a doctrine. It stands absolutely alone. The opinion represents the ideas of one judge backed by no authority; and a district judge at that. We submit his opinion for consideration. His premises are based upon expediency. It is not the law, and cannot be the law. The courts interpret the laws as they find them; not make laws to suit conditions arising unprovided for. This opinion will not be followed.

Argued orally by *J. P. Alexander,* for appellee.

COOK, J., delivered the opinion of the court.

On October 6, 1902, the county of Hinds issued twenty-five-year bonds of the county, payable at the option of the county any time after five years by authority of and in conformity to section 311 of the Code of 1892, as amended by Acts Leg. 1900, p. 165, and by section 312 of said Code. The bonds so issued were made payable to John Nuveen & Co., or bearer, at the office of the county treasurer in the city of Jackson. At a regular meeting of the board of supervisors of said county in the month of January, 1910, it was found that the county had on hand, arising from the special tax levied for that purpose, a sufficient amount to pay off a portion of said bonds, and the county having a right so to do, and this right having been reserved upon the face of the bonds, the board entered an order upon its minutes exercising its option to pay off the bonds numbered 21 to 57, inclusive. The order gave notice to the holders of these bonds, and directed them to present same for payment to the county treasurer at his office on the 7th day of February, 1910, and provided, further, that interest would cease from the date fixed for their presentation for payment. It appears, further, that the county had set apart and placed in its treasury a sufficient amount to pay the bonds and accrued interest to said date, and that the money has been so kept ever since. This order was published in a newspaper in said county, the official organ of the county, for a period of three weeks next before the date fixed as aforesaid.

Appellee was the holder of the bonds in question, and never had any actual notice of said order or advertisement thereof, and on the 1st day of February, 1911, sought to collect the interest coupons for 1910. The county refused to pay the interest, but, by agreement, it paid the face of the bonds, and held the interest pending a judicial determination of its liability. This suit was

then instituted to enforce the payment of the interest accruing before actual notice of the option to pay was brought home to the holders of the bonds. After hearing the facts as above stated, the trial court peremptorily instructed the jury to find for appellees, which was accordingly done, and the county appeals to this court.

No case has been called to our attention deciding the exact question involved in this appeal. The case most nearly in point was decided by District Judge Phillips, and is reported in 66 Fed. 127, styled *Stewart* v. *Henry County*. The learned judge in his opinion reaches his conclusions in a forceful and lucid manner, but, at last, when the opinion is boiled down, it can only be said that a strong argument is made to support his conclusions, which were based upon expediency and the practical impossibility of giving actual notice to holders of bonds payable to bearer. It will be borne in mind that the statute, by the authority of which these bonds were issued and sold, provides no method by which the option to call and pay the bonds may be exercised. It merely conferred the power to pay the bonds after five years from the date of their issuance—that is all. It would have been competent for the lawmaking department to have provided for constructive notice of the option, and, had such procedure been prescribed and followed by the county, there would have been no lawsuit. This was not done. Whose fault was it? The representatives in the legislature were the representatives of the seller of the bonds, and not of the buyer. The buyer had no control of, or influence over, the legislature, and, while they took the bonds with notice that the county had the power to call the bonds after five years, yet did they not have the right to be notified when the county had decided to exercise the privilege of paying its bonds? The option to pay the bonds after five years must necessarily be signified by some affirmative act of the county, and it would seem that, so long as the holders of the bonds were unaware of the desire and purpose of

the obligor to pay before payment could be enforced, they were under no legal or moral obligation to inquire concerning the county's purpose in reference thereto. If A. executes his note payable to B., or bearer, on or before a date named, A. must, of course, notify the holder of the note by tendering payment, should he desire to pay before the maturity of the note. The bonds are in all essentials the notes of the county, and it is believed that, in the absence of a performance of some statutory method of constructive notice, the holders of the bonds must have had actual notice before interest could be stopped.

As said before, Judge Phillips makes a strong argument in support of the contrary view, upon the ground of the practical difficulty of giving actual notice to holders of unregistered bonds, payable to bearer. The credit of the state or county should be maintained, and the holders of public securities are entitled to the same fair treatment accorded to holders of ordinary commercial paper. It was the fault of the legislature that no constructive notice was created, and it is but just to visit the consequences of this omission upon the county rather than upon creditors of the county.

It is admitted that the judgment entered by the trial court was erroneous. The judgment here will be for the accrued interest of 1910, with six per cent. interest thereon from February 1, 1911.

*Affirmed.*