W. STANLEY BROWN et al., Respondents, *v.* J. P. MORGAN & Co., INCORPORATED, Appellant.[*]

First Department, March 12, 1943.

*Russel S. Coutant* of counsel (*William C. Cannon* with him on the brief; *Davis Polk Wardwell Gardiner & Reed,* attorneys), for appellant.

[*] Revg. 177 Misc. 626.

*Paul E. Kern* for respondents.

*Appleton, Rice & Perrin,* attorneys for Bank of Manhattan Company as *amicus curiæ.*

GLENNON, J. This is an action in aid of an attachment. The defendant has appealed from a judgment insofar as it directs it to turn over to the sheriff of New York County the balance of a sinking fund account remaining in its hands as Fiscal Agent of Consorzio di Credito per le Opere Pubbliche, an Italian corporation, which when necessary will hereafter be referred to as Credit Consortium. The attachment was issued in an action brought by plaintiff Brown against Credit Consortium to recover $10,350 alleged to be due on ten $1,000 bonds. The fund claimed to have been attached is a balance of $11,850 in a sinking fund account.

The defendant contends that the balance in the sinking fund was not the property of Credit Consortium but is a trust fund which it is holding for the benefit of certain of the company's bondholders.

Credit Consortium on March 18, 1927, entered into a contract with J. P. Morgan & Co., providing for the issue and sale of bonds of Credit Consortium, described in the contract as External Loan Sinking Fund Seven Per Cent Secured Gold Bonds of $1,000 each, comprising bonds of Series A of $4,500,-000 payable March 1, 1937, and bonds of Series B in the amount of $7,500,000 payable March 1, 1947. It would be well to note here that at the time the contract was made, J. P. Morgan & Co., was a partnership. Since then it has become a corporation, and appears in this action as a corporate defendant. The entire issue was sold to defendant and subsequently the latter resold the bonds to the public. Since it appears that the Series A bonds were retired pursuant to the terms of the contract, we are concerned only with the rights which have accrued under the provisions of Series B bonds and the sinking fund provisions of the contract pertaining thereto.

The sinking fund provisions appear in article 3 of the contract. It was provided that Credit Consortium, as obligor, would pay to the defendant as Fiscal Agent in gold coin of the United States of America on or before the first day of July, 1927, and semi-annually thereafter on or before the first day of January and July of each year, moneys therefor on the Series B bonds. The pertinent provision in that regard reads as follows:

" So long as any of the Series B Bonds shall be outstanding, the Obligor will pay as aforesaid to the Fiscal Agent for such service of such Bonds the sum of $88,750, plus an amount equal to the interest which would be payable on the next succeeding interest date on Series B Bonds retired prior to such payment through the Sinking Fund if held uncancelled.

" Bonds redeemed through the sinking fund shall be cancelled by the Fiscal Agent and delivered to the Obligor. No Bond of the Loan shall be issued in replacement of any Bond retired through a sinking fund."

The contract provided that the redemption of bonds should be made on September 1, 1927, and thereafter on March 1 and September 1 in each year in the following manner: " The Fiscal Agent shall cause to be determined by lot, in such manner as it shall deem proper, the serial numbers of such principal amount of the Bonds as the moneys in the sinking fund shall be sufficient to redeem at par. Thereupon the Obligor by its Fiscal Agent shall cause to be published four times in one newspaper of general circulation in the aforesaid Borough of Manhattan, City of New York, the first publication to be made at least forty-five days prior to the redemption date and three additional publications to be made after such first publication and prior to the redemption date, a notice setting forth that the Bonds bearing serial numbers recited in such notice will be redeemed and paid at the place of payment expressed in the Bonds upon the interest payment date next ensuing, at par, upon presentation and surrender of each such Bond and of the coupons appurtenant thereto maturing after such redemption date. The coupons maturing on such redemption date, and any unpaid coupons previously maturing, shall remain payable and shall be paid by the Obligor in accordance with the terms thereof."

Pursuant to the provisions of the bond, the place of payment was at the office of the defendant in the Borough of Manhattan, City of New York. The bonds which were issued provided for the operation of the sinking fund as follows:

" In and by said Loan Contract, as will appear more fully by reference to the excerpt therefrom inscribed on the reverse hereof, the Obligor covenants duly to pay to the Fiscal Agent the moneys required to pay the interest on the Bonds of each such Series, and to provide for the amortization thereof through a sinking fund.

" This Bond is subject to redemption prior to maturity (a) by operation of the sinking fund on the first day of September in the year 1927 or thereafter semi-annually on

the first day of March and the first day of September in each year, by payment of the principal sum, or (b) at the option of the Obligor on any interest payment date by payment of 102½% of the principal sum,—publication in either case to be made by the Obligor of notice of such redemption in a newspaper of general circulation in the aforesaid Borough of Manhattan, City of New York, at least forty-five days prior to the redemption date, the interest due on the redemption date being also payable upon presentation of the coupon therefor, in accordance with the terms thereof, all as more fully set forth in the above-mentioned excerpts from the Loan Contract. Except as aforesaid this Bond shall not be redeemable prior to maturity."

It was stipulated that at the time of the levy of the attachment, November 29, 1940, the defendant had three accounts in the name of Credit Consortium. We are concerned here only with the sinking fund account in which there was a balance of $11,850. The obligor on January 2, 1940, pursuant to the sinking fund provisions of the contract paid to the defendant the sum of $209,972.14. This amount included $88,750 plus a sum equal to the interest which would have been payable on the next succeeding interest date on bonds that had been retired through the sinking fund and were held uncancelled.

According to the testimony of Leonhard A. Keyes, who, incidentally, was the only witness called, the defendant first credited this amount to the general account of Credit Consortium. It then debited the general account of that company with $209,710 and credited that amount to the sinking fund account. Defendant made a further debit for the balance of that remittance in the sum of $262.14 to cover its commissions. Later, on January 10, 1940, pursuant to the terms of the contract, defendant caused to be determined by lot the serial numbers of such principal amount of bonds as the balance of the sinking fund account was sufficient to redeem at par, namely, 209 bonds.

Under date of January 12, 1940, defendant published a redemption notice addressed to the bondholders of Credit Consortium which read in part as follows:

" Notice Is Hereby Given that pursuant to Section 2 of Article Three of the above-mentioned Contract, the undersigned, Fiscal Agents of the Issue, have drawn by lot for redemption on March 1, 1940, out of sinking fund moneys received by the undersigned and applicable to such redemption, $209,000 principal amount of Series ' B ' Bonds, bearing the below scheduled serial numbers, viz: " It set forth a list of 209 serial numbers

so drawn and stated that all such bonds would be redeemed. At the foot of the notice, the following statement appears:

" On January 9, 1940, Bonds bearing the following distinctive numbers previously drawn for redemption had not been presented for payment: " Incidentally, it might be noted that of the 19 Series B bonds which were listed in this part of the notice, there remained in the sinking fund the sum of $19,140 to redeem them.

Of the 209 bonds last drawn for redemption all but ten, and of the bonds previously drawn all but one, were presented by the holders thereof and paid before plaintiff Brown obtained his attachment. As a result there was held in the sinking fund account to cover these outstanding bonds the sum of $11,000. In addition thereto there remained the sum of $850 which being insufficient to cover the value of a bond, was held to apply against the next drawing.

The question which we are called upon to determine is the ownership of the fund which defendant had on hand at the time the attachment was levied. Did the defendant hold this fund as agent of Credit Consortium or as trustee for the bondholders who failed to appear to redeem their bonds? We are inclined to the view that the money in fact belongs to the bondholders. It was earmarked and was a trust fund in the true sense of the term. Credit Consortium has lost all control over this fund which has been set up to redeem the bonds of those whose serial numbers were drawn by lot as provided for in the contract. (*Rogers Locomotive, etc., Works* v. *Kelley*, 88 N. Y. 234.)

It should be noted again that the bonds themselves are called External Loan Sinking Fund Seven Per Cent Secured Gold Bonds. Further, under the provisions of the contract between Credit Consortium and the defendant, the bonds were to be retired through the sinking fund and each bond contains a provision which clearly indicates that a sinking fund was to be set up for the purpose of their retirement. Consequently, when the defendant received the sum of $209,972.14 and allocated it for the purpose for which it was intended, a trust for the benefit of the bondholders whose numbers were subsequently drawn, was created for their benefit. As a result that fund could not be attached by any other creditor of Credit Consortium. (*Babcock P. P. Mfg. Co.* v. *Ranous*, 164 N. Y. 440.)

It seems absurd to argue that the fund established by the defendant for the benefit of the bondholders was not a sinking fund in the true sense in which that term is applied.

Under the circumstances, the judgment, so far as appealed from, should be reversed, with costs and the complaint dismissed with costs.

MARTIN, P. J., TOWNLEY, COHN and CALLAHAN, JJ., concur.

Judgment, so far as appealed from, unanimously reversed, with costs and the complaint dismissed with costs. Settle order on notice.