Vivian F. RODIN, City Clerk, City of Cheyenne, Appellant-Defendant (Defendant below),

and

State of Wyoming ex rel. Everett T. Copenhaver, State Treasurer, Appellant-Intervenor (Intervenor below),

v.

STATE of Wyoming ex rel. CITY OF CHEYENNE, Appellee-Plaintiff (Plaintiff below).

No. 3498.

Supreme Court of Wyoming.

July 27, 1966.

Thomas O. Miller, of Miller, Suyematsu, Crowley & Duncan, Cheyenne, for appellant-defendant.

John F. Raper, Atty. Gen., Cheyenne, for appellant-intervenor.

Brooke Wunnicke, of Williams, Wunnicke & Fennell, Cheyenne, for appellee-plaintiff.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

In an action by the State of Wyoming for an alternative writ of mandamus and declaratory judgment, instituted upon the relation of the City of Cheyenne, the plain-

tiff sought to compel Cheyenne's city clerk to endorse the City's refunding securities and to give notice of prior redemption of certain of Cheyenne's outstanding bond securities which were subject to call. This required determination of the constitutional validity of ch. 91, S.L. of Wyoming, 1965, by virtue of which the refunding program of the City was undertaken, as well as the validity of Cheyenne's Ordinance No. 1491, which authorized the issuance of the refunding securities; the validity of an escrow agreement; the validity of an agreement with underwriters concerning purchase of United States securities; and the validity of provisions for their marketing; the handling and application of refunding proceeds, the call for prior redemption of certain outstanding bonds, the provisions of which authorize prior redemption, and of various other matters incidental to the accomplishment of the ultimate purpose of substituting the refunding bonds for Cheyenne's outstanding bonds.

Upon trial to the district court, sitting without jury, and upon agreed facts, supplemented by the testimony of a single witness testifying in behalf of the City and numerous exhibits which included the schedules of a certified public accountant, authenticated as to their correctness, the trial court made numerous findings of fact and conclusions of law from most of which defendant has appealed and intervenor has appealed in part. Rather than giving any judgment as to the constitutional matters involved, the trial court elected to reserve and certify to this court certain questions as being important and difficult. They are as follows:

"1. Does the title to Chapter 91, Session Laws of Wyoming, 1965, 'An act concerning the refunding of public securities' embrace the subject of the advance escrow-type refunding provisions of said Act in all particulars and express said subject with sufficient clarity so as to comply with Article 3, Section 24 of the Wyoming Constitution?

"2. Do the provisions of Section 10, Chapter 91, Session Laws of Wyoming, 1965, prescribing the powers and duties of the escrow bank with respect to escrowed municipal funds constitute a delegation of power to a private corporation to supervise public moneys, properties, or effects, or otherwise perform municipal functions in contravention of Article 3, Section 37 of the Wyoming Constitution?

"3. Is the refunding authorized by Chapter 91, Session Laws of Wyoming, 1965, and plaintiff's Ordinance No. 1491 for a public purpose as required by Article 13, Section 3 of the Wyoming Constitution?

"4. Do the advance escrow-type refunding provisions of Chapter 91, Session Laws of Wyoming, 1965, contravene Article 16, Section 4 of the Wyoming Constitution in any of the following respects:

"a. Does the concurrent running of interest on both the refunding bonds and on some of the bonds to be refunded during the maximum fifteen-year escrow term, authorized by Section [sic] 5 and 10, Chapter 91, Session Laws of Wyoming, 1965, constitute the creation of a debt in excess of taxes for the current year without an approving election?

"b. Does the plaintiff's authorized payment of $79,285.50 refunding bond expenses from refunding bond proceeds pursuant to Section 9 of Chapter 91, Session Laws of Wyoming, 1965, constitute the creation of a debt in excess of taxes for the current year without an approving election, said amount not having been included in plaintiff's 1965–1966 budget (Defendant's Exhibit 1)?

"c. Does the provision of Section 10, Chapter 91, Session Laws of Wyoming, 1965, which authorizes the proceeds of refunding public securities to be placed in escrow instead of immediately applying said proceeds to the retirement of the public securities to be refunded constitute the creation of a debt in excess of taxes for the current year without an approving election?

"5. Does the refunding authorized by Chapter 91, Session Laws of Wyoming, 1965, and plaintiff's Ordinance No. 1491 comply with the municipal debt limitation provisions of Article 16, Section 5 of the Wyoming Constitution?"

■ Wyoming's state treasurer intervened to contest the City's asserted right to recall, on October 1, 1976 and thereafter, five one-thousand-dollar city bonds which are owned by the State of Wyoming, and to make payment therefor with proceeds from the refunding bonds, claiming that to do so would conflict with the express prohibition contained in § 9–626, W.S.1957. This statute declares that, "such redemption shall be made *only from sinking funds* of said political subdivisions, and *not from funds obtained by its refunding of such bonds.*" (Emphasis supplied.) The trial court found that, as the state-held bonds contained express provision for their prior redemption, the statute was inapplicable. The court's finding amounts to an interpretation of the statute with which we agree and does not involve any constitutional question. Therefore, we shall hereinafter consider only the appeal of the city clerk.

*Question No. 1:*

■ Ch. 91, S.L. of Wyoming, 1965, is titled "An Act concerning the refunding of public securities and repealing [certain sections of W.S.1957]." While this title is brief, it is nevertheless sufficiently comprehensive to encompass all aspects of refunding programs to refinance existing public securities. Art. 3, § 24 of our Constitution demands only that such a statute contain but one subject which must be clearly expressed in the title and prohibits more than one subject being embraced in an act. The single subject of ch. 91, is clearly stated to be the refunding of public securities and in the context of the Act nothing is found but matter dealing exclusively with matter incident to that subject. The portion dealing with advance escrow-type refunding is a proper if not a necessary item to make possible and effective the primary purpose to refund outstanding public securities where

some such securities may not be immediately retired.

*Question No. 2:*

■ The submitted question regarding § 10, ch. 91, S.L. of Wyoming, 1965, indicates that § 10 prescribes "the powers and duties of the escrow bank with respect to escrowed municipal funds." Section 10 is as follows:

"The proceeds of refunding public securities shall either be immediately applied to the retirement of the public securities to be refunded or be placed in escrow in any state or national bank within the State which is a member of the Federal Deposit Insurance Corporation and which has trust powers, to be applied to the payment of the public securities being refunded upon their presentation therefor; and any accrued interest and any premium appertaining to a sale of refunding public securities may be applied to the payment of the interest thereon and the principal thereof, or both interest and principal, or may be deposited in a reserve therefor, or may be used to defray incidental costs, as the governing body may determine. Any such escrow shall not necessarily be limited to proceeds of refunding public securities, but may include other moneys available for its purpose. Any escrowed proceeds, pending such use, may be invested or reinvested in federal securities. Such escrowed proceeds and investments, together with any interest or other yield to be derived from any such investment, shall be in an amount at all times sufficient as to principal, interest, any prior redemption premium due, and any charges of the escrow agent payable therefrom, to pay the public securities being refunded as they become due at their respective maturities or due at designated prior redemption date or dates in connection with which the governing body of the issuer shall exercise a prior redemption option. The computations made in determining such sufficiency shall be verified by a certified public accountant licensed to practice in

this state or in any other state. Any purchaser of any refunding public security shall in no manner be responsible for the application of the proceeds thereof by the issuer or any of its officers, agents or employees."

A most careful examination and study of the section fails to reveal that the statute confers any powers or imposes any duties upon the escrow bank other than those inherently undertaken by all depositories of funds or effects belonging to others, or the discharging of conditions of trust imposed upon it. These do not involve discretionary powers but are positive directions. The duty is merely to safekeep the funds and deliver them up on proper order or demand or in accord with conditions or directions laid down by the depositor. This section directs that the proceeds of the refunding securities be placed in escrow in described banks and be applied immediately or thereafter to the payment of the refunded securities. The section does not authorize or empower the escrow bank to make such payments, but merely provides for the earmarking of such funds for withdrawal only for the restricted purposes of paying interest accruals upon and redeeming of refunded securities. No independent power of disbursing the escrowed funds, except for the designated purposes, is given unto the escrow bank. Hence, the section contains no delegation of power to a private corporation to supervise public moneys, properties, or effects, or otherwise perform municipal functions.

*Question No. 3:*

■ Ch. 91, S.L. of Wyoming, 1965, and Ordinance No. 1491, are both purposed to effect a saving and for the financial betterment of the City of Cheyenne. That the refunding of the outstanding obligations, with which the City is burdened, will result in an over-all saving of more than two million dollars is shown by a received exhibit certified as correct by accredited public accountants and testified to by plaintiff's witness without there being any contradiction. It is not unlawful for the governing bodies of municipalities to save money for their charges. It is in fact most commendable. To conserve the finances of the City is to serve its interest, and that is the very purpose intended to be insured by Art. 13, § 3, Wyo.Const. As is pointed out in 1 Jones, Law of Bonds and Bond Securities, § 160, pp. 148–149 (4 Ed.), "the ultimate advantage of the public, as contradistinguished from that of the individual, is its characteristic feature."

*Question No. 4:*

■ The principal challenge to the constitutionality of ch. 91, that it is violative of Art. 16, § 4, Wyo.Const., is threefold.

(a) It is first asked if the concurrent running of interest on both the refunding bonds and on some of the bonds refunded, during the 15 years over which the escrow period may extend, will constitute a debt in excess of taxes for the current year which has not been authorized by an approving election.

This question must assume that current accruing interest on both outstanding and refunding issues is to be paid from general taxes. Of course, this is not true as to interest accruals upon the City's outstanding securities which are being refunded: first, because the payment of those bonds and their interest accruals have in fact been authorized by the electorate to be provided by special levy, and second, because under the refunding program, such payments will be made from proceeds and accruals of the refunding securities.

As to interest upon the refunding issues, § 10, ch. 991, gives the municipality express authority to invest the proceeds from refunding bonds, not immediately or subsequently used for redemption of outstanding bonds, in federal securities and to use the interest increment therefrom to satisfy current interest accruals upon the bonds to be refunded. As the uncontradicted evidence contained in the exhibits hereinabove referred to, coupled with unchallenged testimony of plaintiff's witness, supports the trial court's finding that as there will be sufficient accruals from investment in

federal securities to satisfy all interest becoming due upon the outstanding bonds there will be no new debt created by the issuance of the refunding bonds and their interest accruals because the refunding issues will merely be in substitution for but in less amount than the principal bond debt and interest accruals thereon authorized by election.

■ (b) The next query is whether the City's authorizing a payment of $79,285.50 refunding bond expense from proceeds of the refunding issue creates a debt in excess of taxes for the current year without there being an approving election.

Similar to the reasons assigned in the foregoing discussion respecting § 10, ch. 91, S.L. of Wyoming, 1965, the City's commitment to pay the expense of the refunding does not constitute the contracting of a debt but is rather merely the earmarking of a portion of the proceeds from the refunding bonds to defray the expenses incurred in connection with the refunding program. The City undertakes no obligation which will be a drain upon its annual budgeted finances. It is only required that the expenses, incurred in providing itself with additional funds from which to satisfy its existing liability, be paid from that source.

How such a major undertaking as that of refinancing a city's thirteen-million-dollar-plus debt and thereby effect a two-million-dollar saving without incurring a reasonable expense (which fact the trial court has found in the instant case) is most difficult to understand.

(c) The last question submitted asks if the refunding authorized by ch. 91, S.L. of Wyoming, 1965, complies with the municipal debt limitation imposed by Art. 16, § 5, Wyo.Const.

It is apparently assumed that the existing indebtedness of the City is within the constitutional debt limit but that if the debt of the refunding bonds was added to the debt of the outstanding bonds, the sum total of bonded indebtedness would be in excess of the City's constitutionally allowable debt limit. The question then is, Will the issuance of the refunding bonds create an additional debt?

It would seem that, even though all the outstanding bonds were redeemable at the time moneys sufficient for their retirement became available, there would necessarily be some time interval between the money becoming available and its actual application to the retirement of the indebtedness. That time interval could be but momentary or more probably might encompass a somewhat longer period of time. The point is that even under the best of conditions there must be some lapse of time from when the money to pay is at hand and when it is actually paid and the evidence of debt is received back. So, where the money to pay is to be obtained by the sale of another evidence of debt, even if the proceeds could be used immediately to pay off the existing liability, there will certainly be some interval of time, however, short or long, when there will be outstanding a dual indebtedness, and if its total amounted to more than that permitted by the Constitution, it might be considered as illegal although there was a present ability to fully discharge the pre-existing debt.

Now let us assume that there are bonds of a city outstanding and unpaid, in an amount equalling the maximum debt allowable under the Constitution; that the time for redemption has come and the city has in its treasury sufficient funds with which to retire the entire bonded debt, both principal and interest, but the holder of the security for one reason or another fails to present the security. While this may seem improbable, nevertheless it could happen. For instance, the bonds may be lost or hidden away, the owner may have died with no one knowing their whereabouts, or the owner might prefer to retain the bonds as excellent security for their principal even though no longer interest-bearing. Whatever the reason may be, the city will continue to have unpaid and outstanding bond obligations in the amount of its maximum constitutional indebted-

ness, and, as a result, could not provide itself with any finances through the sale of its securities until at least the statutes of limitation have run. As a result, the city could not for a considerable number of years provide itself, through the sale of its bonds, with moneys necessary to finance its needed current facilities and improvements.

To give such an interpretation to the constitutional inhibition would not only be contrary to the public weal but would, in fact, defeat the real purpose of giving a city bonding authority, which is to permit the incurrence of bonded indebtedness although limiting the amount, so taxpayers will not be burdened with levies beyond those they might reasonably be able to pay.

Under statutory authority, the City of Cheyenne has lawfully incurred close to its constitutional limit of bonded debt. The legislature in its wisdom has by ch. 91, S.L. of Wyoming, 1965, recognized that from time to time municipalities might be able to procure a more favorable interest position than that which was available at the time bonded indebtedness was incurred. The enactment recognized, however, that the debtor could not unilaterally vary or change its commitments under the terms of its issued securities. Therefore this legislation makes available what is designated as an "escrow" method for the safekeeping deposit of funds received from refunding bond sales until their application in payment of the obligations of its previously issued securities according to their tenor or for interim investment of the refunding proceeds in federal securities which would produce increment in amounts sufficient to pay both interest and principal of outstanding obligations.

Where there are funds provided for the payment and retirement of an outstanding debt, the reasonableness of the time lapse between the ability to pay and the actual payment and retirement of the outstanding debt stamps the new debt, the proceeds of which provide payment of the old debt, as being an *additional* obligation or a debt created in *substitution* for an existing liability.

■ Faced with the knowledge that many municipalities have bonded debts which in some instances could not, under bond terms, be satisfied and redeemed for many years, the legislature fixed as reasonable the period of 15 years as the limit of time within which existing bonds might be retired from proceeds of authorized refunding securities. We are not disposed to differ with the legislative judgment in this respect. See McGarvey v. Swan, City Treasurer, 17 Wyo. 120, 144, 96 P. 697, 703; State v. Sherman, 18 Wyo. 169, 177, 105 P. 299, 300, 27 L.R.A., N.S., 898.

By the refunding authorized under the criticized Act, the taxpayers of the City will not be subjected to any new tax or any tax whatsoever which they have not already accepted and approved by their vote. Even the expenses necessarily incurred in connection with the refunding program impose no new obligation or debt upon the City's taxpaying public. On the contrary, the City and its taxpayers will be saved many times the amount of that expense.

■ Where a program is adopted by the legislature which is calculated to enable municipalities to take advantage of changing conditions in the money market of the country to its financial betterment, it behooves the judicial arm to give such enactments every reasonable intendment which will uphold its constitutionality in order that its commendable purpose may be accomplished.

Sections 458 and 459 of 38 Am.Jur., Municipal Corporations, pp. 141–143, discuss the question of duality of bond obligation arising from funding or refunding bond issues, and § 458 says:

"The issuance of bonds by a municipality for the purpose of funding or refunding its valid outstanding indebtedness does not increase its aggregate indebtedness within the meaning of a constitutional or statutory provision limiting indebtedness,

but merely changes the form of an existing debt. Such issuance of funding or refunding bonds merely evidences existing debts, and operates as an exchange of one evidence of indebtedness for another, and the old indebtedness is not extinguished by the refunding, but continues to exist as evidenced by the new obligation. * * *"

These text statements are supported by Jasper County v. Ballou, 103 U.S. 745, 26 L.Ed. 422; Independent School Dist. of Sioux City, Iowa v. Rew, 8 Cir., 111 F. 1, 55 L.R.A. 364; City of Huron v. Second Ward Sav. Bank, 8 Cir., 86 F. 272, 49 L.R.A. 534; Allison v. City of Phoenix, 44 Ariz. 66, 33 P.2d 927, 93 A.L.R. 354; Kocsis v. Chicago Park Dist., 362 Ill. 24, 198 N.E. 847, 103 A.L.R. 141; and Maish v. Territory of Arizona, 164 U.S. 599, 17 S.Ct. 193, 41 L.Ed. 567.

Veatch v. City of Moscow, 18 Idaho 313, 109 P. 722, 724, 21 Ann.Cas. 1332, expressly repudiates Doon Township v. Cummins, 142 U.S. 366, 12 S.Ct. 220, 35 L.Ed. 1044, which held to the contrary, and says, "The issue of a refunding bond does not generally create a new indebtedness * * * but it simply changes the form of the indebtedness and usually reduces the rate of interest."

After noting the doctrine laid down by a divided court in the Doon case, §§ 458, 459, 38 Am.Jur., Municipal Corporations, pp. 141–143, point out it has not found favor even in federal courts and many have managed to follow the majority rule rather than the contrary result of Doon.

In National Life Ins. Co. of Montpelier v. Mead, 13 S.D. 37, 82 N.W. 78, 81, 48 L.R.A. 785, affirmed 13 S.D. 342, 83 N.W. 335, after citing Miller v. School Dist. No. 3, In Carbon County, 5 Wyo. 217, 39 P. 879, the South Dakota court said:

" * * * Where the proceeds of funding bonds are properly applied, the transaction may in form be a borrowing of money, but in substance it is not different from what it would be had there been an exchange of bonds for other evidences of debt. The contemplated purpose and actual result are the same. The municipal liability is not increased, but merely suffered to remain. City of Poughkeepsie v. Quintard, supra [136 N.Y. 275, 32 N.E. 764]. The argument that the indebtedness is instantly increased by the delivery of funding bonds, unless an equal amount of outstanding obligations is thereby extinguished, is without force where, as in this jurisdiction, available resources or assets may be considered in determining when additional indebtedness is created. * * * The delivery of funding bonds, when sold at par, operates as an exchange of paper promises to pay for an equal amount of money instantly available for the extinguishment of an equal amount of other promises to pay. Assuming that this money remains in the treasury until used for the purpose intended, there is no moment of time when the financial condition of the city is in any substantial manner affected. Notice to holders of matured obligations stops the running of interest, and the city, with the proceeds of its funding bonds on hand, is in as good position as it would be if in possession of the evidences of its paid obligations duly canceled. * * *"

It might be added that in Annotation, 97 A.L.R. 443–445, 27 jurisdictions, including Wyoming, are listed as holding that to issue refunding bonds does not increase indebtedness nor is consent of electors necessary.

■ We therefore hold that the irrevocable and positive commitment of moneys made presently available through the sale of refunding bonds, for either the immediate or future payment of both principal and accruing interest of outstanding securities, must be considered as an acceptable substitute for the actual discharge of debt, otherwise the bondholder could, by the unilateral act of withholding presentation for payment of the evidence of debt, have the debt continued until statutes of limitation run, thus defeating a municipali-

ty's opportunity to finance its necessary future needs.

Question No. 5, is sufficiently answered in the foregoing discussion relative to Question No. 4.

The constitutional questions having been fully discussed, it is now necessary to examine the objections raised upon appeal, that:

1. Due process requires personal notice be given to the refunded bondholders;

2. Payment to the underwriters of refunding expenses from proceeds of refunding bonds is unreasonable and constitutes a sale of the refunding bonds at a discount;

3. Using refunding bond proceeds for prior redemption of existing bonds held by the State is prohibited by statute;

4. Outstanding "sanitary sewer bonds" and "storm sewer bonds" are subject to different constitutional debt limitations and may not legally be combined into one refunding bond series;

5. Issuance of refunding bonds at a rate higher than that provided by outstanding securities is unlawful;

6. Current city officials may not bind municipality over a 15-year period;

7. The escrow must comply with Constitution as to designated depositories of public funds;

8. Public funds may not be used in an investment business;

9. Provisions of ch. 91, S.L. of Wyoming, 1965, are not severable;

10. Neither the City's agreement with the underwriters, nor the escrow agreement, nor City Ordinance No. 1491, is lawful; and

11. Ch. 91, S.L. of Wyoming, 1965, does not authorize issuance of four series of refunding bonds.

In order that a fuller understanding may be had of what follows, a condensation of the enabling ordinance authorizing the refunding, the City's agreement with the underwriters, and the escrow agreement with the bank follows.

*ORDINANCE NO. 1491:*

This ordinance was titled:

"AN ORDINANCE AUTHORIZING THE SALE AND ISSUANCE BY THE CITY OF CHEYENNE OF ITS NEGOTIABLE, COUPON, GENERAL OBLIGATION REFUNDING BONDS TO REFUND OUTSTANDING GENERAL OBLIGATION BONDS OF THE CITY; PROVIDING FOR THE REFUNDING AND PAYMENT OF THE DESIGNATED OUTSTANDING BONDS AS THE SAME BECOME DUE, FOR THE CREATION OF AN ESCROW AND THE EXECUTION OF AN ESCROW AGREEMENT APPERTAINING THERETO, FOR THE PAYMENT OF INCIDENTAL EXPENSES AND FOR THE PURCHASE OF FEDERAL SECURITIES WITH THE REFUNDING BOND PROCEEDS AND OTHER MONEYS, FOR THE DEPOSIT OF THE FEDERAL SECURITIES IN THE ESCROW AND FOR THE TEMPORARY INVESTMENT AND REINVESTMENT OF THE ESCROWED MONEYS; PROVIDING THE FORM, TERMS AND CONDITIONS OF THE REFUNDING BONDS, THE MANNER AND TERMS OF THEIR ISSUANCE, THE MANNER OF THEIR EXECUTION, THE METHOD OF PAYING THEM, AND THE SECURITY THEREFOR; PROVIDING FOR THE LEVY AND COLLECTION ANNUALLY OF A GENERAL (AD VALOREM) TAX AND FOR THE USE OF SUCH TAX PROCEEDS AND OTHER MONEYS FOR THE PAYMENT OF THE REFUNDING BONDS; PROVIDING CERTAIN COVENANTS AND OTHER DETAILS AND MAKING OTHER PROVISIONS CONCERNING THE REFUNDING BONDS, THE OUTSTANDING BONDS TO BE REFUNDED, THE DESIGNATED GENERAL TAXES AND OTHER MON-

EYS, THE DESIGNATED ESCROW, AND VARIOUS FUNDS APPERTAINING THERETO; PROVIDING FOR THE PRIOR REDEMPTION OF SOME OF THE OUTSTANDING BONDS TO BE REFUNDED AND FOR GIVING NOTICE OF PRIOR REDEMPTION; RATIFYING ACTION PREVIOUSLY TAKEN AND APPERTAINING THERETO; AND DECLARING AN EMERGENCY AND PROVIDING THE EFFECTIVE DATE HEREOF."

It recites that:

Based upon a study by the (City) council of the desirability and feasibility of refinancing, refunding, and paying of the City's outstanding general obligation bonds, it is necessary and for the best interests of the City and its inhabitants that four series of the City's negotiable, coupon, general obligation bonds in the aggregate principal amount of $13,030,000 be issued, designating them with particularity;

Such bonds be issued to refund and pay, on or before the 1st day of April, 1980, as the same become due, the principal and interest on certain outstanding bonds, describing them;

The City has contracted by an agreement dated and accepted the 21st day of April, 1965, to sell the refunding bonds to Coughlin and Company, Inc., and Boettcher and Company, underwriters, both of Denver, Colorado, for a purchase price consisting of the principal and accrued interest thereon from their last preceding interest-payment date;

An escrow agreement between the City and The American National Bank of Cheyenne is drafted and on file in the office of the city clerk;

1961 and 1963 water bonds becoming due on and after the 1st day of October, 1980, shall be called for prior redemption as of the 1st day of April, 1980;

The principal amount of the refunding bonds shall be less than the principal amount of the refunded bonds;

All of the taxable property within the City is now subject to levy of general (ad valorem) taxes without limitation of rate or amount for payment of interest and principal of the refunded bonds (except to the extent other revenues are available therefor);

No two or more issues or parts of issues of refunded bonds are combined into one issue of refunding bonds hereunder where more than one constitutional or statutory debt limitation is applicable to such combination;

The proceeds of the refunding bonds and other moneys shall be placed in escrow in a national bank within the State which is a member of the Federal Deposit Insurance Corporation and which has trust powers;

The refinancing herein provided is pursuant to the General Obligation Public Securities Refunding Law enacted as ch. 91, S.L. of Wyoming, 1965; and

All limitations of that Act have been met.

It is then ordained that:

The City's outstanding general obligation bonds in the principal amount of $13,795,000 (excluding such bonds becoming due on or before June 1, 1965) be refinanced, refunded, and paid as in the ordinance provided;

The estimated cost of the project is not to exceed $13,030,000 excluding costs defrayed from sources other than proceeds of refunding bonds;

Purchase of the refunding bonds shall constitute a contract between the City and the refunding bondholders;

The full faith and credit of the City is irrevocably pledged to the punctual payment of principal and interest on the refunding bonds and they constitute a general obligation of the City payable from general (ad valorem) taxes on all taxable property in the City levied annually without limitation as to rate or amount (except for other funds used therefor);

There shall be issued by the City refunding bonds in four series for purposes described therein;

The refunding bonds shall be dated the 1st day of June, 1965 (particular description followed as to each series);

The refunding bonds maturing before the 1st day of October, 1980, shall not be subject to prior redemption;

Certain 1965 refunded water bonds, maturing after the 1st day of April, 1981, shall be subject to redemption prior to their respective maturities in inverse numerical order at the option of the City, on the 1st day of October, 1980, or any interest-payment date thereafter;

Notice of prior redemption shall be given by the city treasurer in the name of the City, when authorized and directed by resolution adopted by the council, by publication of notice at least once, not less than 30 days prior to the redemption date, in a newspaper of general circulation in the City of Cheyenne, Wyoming, in "The Bond Buyer," New York, New York, or in a similar financial newspaper published therein, as the council may determine and by sending a copy of such notice by registered, first-class postage-prepaid mail at least 30 days prior to the redemption date to Coughlin and Company, Inc., Denver, Colorado, and to Boettcher and Company, Denver, Colorado, the notice specifying by number the bonds to be redeemed, the redemption date, and the principal amount and accrued interest;

Title to such bonds shall pass by delivery;

Facsimile signatures may be used on bonds;

Bonds shall be made up as therein described;

The mayor, city clerk and city treasurer are directed to prepare and execute the bonds and deliver them to the underwriters on receipt of the agreed purchase price;

All moneys received as accrued interest at the time of delivery of the four series of refunding bonds shall be deposited in the respective special series funds as specified to apply on payment of interest next due on each refunding bond series;

From proceeds of the sale of refunding bonds, $79,285.50 shall be paid to the underwriters;

With certain exceptions, not here material, the proceeds from sale of the refunding bonds together with other specified money shall be deposited with The American National Bank of Cheyenne, Wyoming, in a separate escrow account to be sometimes known as the "Refunding Fund" and sometimes designated in the "Escrow Agreement" as the "Escrow Account," in an amount sufficient to pay the principal and interest on the refunded bonds and any moneys remaining in the account after payment of the outstanding bonds shall be applied as the council may direct;

If the refunding fund shall be insufficient for the aforementioned purpose, the City shall forthwith deposit in the fund from available general (ad valorem) taxes or other revenues such additional moneys as shall be necessary to pay the designated principal and interest;

There shall be levied without limitation as to rate or amount on all taxable property in the City, taxes sufficient in amount to pay principal and interest on the refunding bonds, such tax moneys to be deposited in the four bond funds and applied solely to payment of principal and interest of the refunding bonds, but the City may also apply other available moneys for that purpose;

In the event taxes for payment of such principal and interest should not be levied or collected, the maturing principal and interest shall be paid from the City's general or other fund, the council making reimbursement from the first moneys collected from taxes thereafter levied;

The council shall, if necessary, annually ratify and carry out the provisions of the ordinance and require the city officers to levy and extend the taxes to create funds for payment of principal and interest of the refunding bonds and keep such in the bond funds;

Certain of the refunded outstanding bonds shall be called for prior redemption as of April 1, 1980;

The mayor and city clerk are authorized to execute in the name and on behalf of the City the escrow agreement, and city officers are to take all action necessary to effectuate the ordinance;

Previous actions taken by council are ratified;

Ordinance is irrepealable; and

Any section, subsection, paragraph, clause or provisions held invalid or unenforceable shall not affect remaining provisions.

## CITY'S AGREEMENT WITH UNDERWRITERS:

Another instrument in the record is a joint proposal of Coughlin and Company, Inc., and Boettcher and Company, as underwriters, which proposal over the signature of its mayor was accepted on behalf of the City of Cheyenne, Wyoming, after noting the feasibility and advisability of a bond refunding plan. The substance of this agreement provides that:

The underwriters agree to purchase at par and accrued interest from date of the bonds to date of delivery to the underwriters $13,030,000 City of Cheyenne, Wyoming, General Obligation Refunding Bonds to be dated June 1, 1965, and to mature serially April 1 and October 1, as set forth on attached exhibits, such bonds to be payable at any one of four named paying agents, the bonds to be callable at the City's option on October 1, 1980, or any interest-payment date thereafter at par and accrued interest;

All expenses incident to the refinancing, including legal fees, bank escrow charges, bond printing, publication costs, and miscellaneous expenses will be assumed and paid by the underwriters;

The City will purchase from the underwriters all United States Government securities (with an attached exhibit describing such bonds) necessary to establish the escrow account and complete the refunding plan at a price equivalent to the cost to the underwriters of purchasing said federal securities plus accrued interest thereon for the period held by the underwriters, and

$79,285.50 representing all other expenses incident to the refunding plan;

As evidence of good faith the underwriters submit with their proposal a check for $50,000 to be held uncashed and applied as part payment for the bonds at time of delivery but, should the underwriters fail or neglect to complete the financing and purchase of the refunding bonds, the check to be forfeited to the City as full liquidated damages; and

Upon failure of the City to tender the refunding bonds for delivery on or before June 2, 1965, either the City or the underwriters may, by written notice, terminate any obligations thereunder in which event the $50,000 check is to be returned to the underwriters.

## ESCROW AGREEMENT:

An instrument appearing in the record and captioned "ESCROW AGREEMENT," dated June 1, 1965, wherein the City and The American National Bank of Cheyenne are parties, recites in substance that:

Pursuant to the "General Obligation Public Securities Refunding Law" (ch. 91, S.L. of Wyoming, 1965), and Ordinance No. 1491 (referred to as the Refunding Ordinance), there was authorized the issuance and sale by the City of four series of its negotiable, coupon, general obligation bonds, aggregating $13,030,000, for the purpose of refunding and paying the principal and interest of nine issues of the City's outstanding bonds as they become due and before April 1, 1980;

A copy of the ordinance has been delivered to the bank;

The federal securities to be purchased are described in an attached exhibit; and

The attached exhibit demonstrates the sufficiency of the federal securities and uninvested money to redeem and pay refunded bonds as they become due.

The document then provides in salient part that:

Simultaneously with the issuance and delivery of the refunding bonds there will be delivered in trust to the escrow bank a sum

sufficient to purchase from the underwriters the designated federal securities and an additional $795.56;

The escrow bank is to purchase the designated federal securities made available by the City from the underwriters;

If the interest and principal upon the federal securities are paid when due the proceeds therefrom together with uninvested cash will be sufficient to promptly pay principal and interest on the refunded bonds when due or on the 1st day of April, 1980;

The escrow bank will notify the city clerk and commissioner of finance, ex-officio city treasurer, by telephone and by registered, first-class mail, postage prepaid, not less than 60 nor more than 90 days prior to the date on which refunded bonds maturing on and after the 1st day of October, 1980, will become due pursuant to their call for prior redemption on the 1st day of April, 1980, of the necessity of mailing and publishing a notice of prior redemption of a designated portion of the 1961 water bonds and the 1963 water bonds;

The City on receipt of such notice will cause the notice, over the signature of the city clerk and city treasurer, to be mailed and published as required;

The escrow bank will hold the purchased federal securities and uninvested money and money received as interest on the federal securities, in trust, to secure payment of principal and interest on the refunded bonds, and will promptly collect the principal and interest on the federal securities held by it as the same become due;

The escrow bank will apply all money so collected and not reinvested to payment of principal and interest on the refunded bonds, except that if there shall remain any money after all principal and interest on the refunded bonds shall have been paid, such remaining money shall be held by the escrow bank subject to the instructions of the City; provided, however, that when all principal and interest on presented, refunded bonds shall have been paid there shall be forwarded to the respective paying agents money sufficient to pay refunded bonds or coupons not theretofore presented for payment by the holders thereof until such date as the right to demand payment thereof by such holders shall have been barred by statutes of limitation, whereupon such moneys shall be held subject to the instructions of the City;

If there be insufficient money to make any payment due upon the refunded bonds, the escrow bank shall notify the City as soon as practicable with the reason therefor;

In November of each year the escrow bank will make a report to the City covering all money received and payments made during the preceding fiscal year ending October 31, listing all federal securities held and the money in the escrow account;

Title to the escrow securities and money held in escrow account shall remain vested in the City subject to the prior charge and lien of the "Escrow Agreement," the escrow bank holding the same as a special trust fund and account separate and wholly segregated from all other funds and securities and never commingled with other money or securities;

All uninvested moneys in the escrow account shall be continuously secured by the deposit in a federal reserve bank of federal securities in a principal amount not less than such money;

In the event the escrow bank fails to account for any money or securities in the escrow account, such money and obligations shall be and remain the property of the City, and if they cannot be identified all other assets of the escrow bank shall be impressed with a trust for the amount thereof and the City shall be entitled to a preferred claim upon such assets;

No money paid into and acounted for in the escrow account shall ever be considered as a banking deposit and the escrow bank shall have no right or title with respect thereto;

Purchasers of the refunding bonds shall not be responsible for application of their proceeds;

The agreement is irrevocable, but if error or omission is discovered, amendments may

be made and suit for declaratory judgment and approval filed by either the City or escrow bank with notice to bondholders by publication at least one time in a New York City newspaper and as otherwise required by court or statute;

Duties and responsibility are limited to those expressed in agreement;

Time is of the essence in performance of obligations imposed on escrow bank; and

If any section, paragraph, clause or provision be held invalid or unenforceable, the same shall not affect any remaining provisions.

We now consider the objections made.

*Objection No. 1:*

Although this court was not called upon to deal with the question of the sufficiency of published notice rather than personal notice to bondholders when call for prior redemption was made in City of Casper v. Joyce, 54 Wyo. 198, 207, 88 P.2d 467, 468, the court, after recounting the facts relative to the city treasurer's practice of transmitting to a designated banking house moneys with which to pay bond interest accruals, observed, "Neither the Treasurer nor the City had in their possession a list of the names and addresses of the holders of these bonds." Under the record before us there is nothing to indicate the names and addresses of holders of the outstanding bonds were known to either the City, its officers or employees, or even to the escrow party or the underwriters. However, the places where interest coupons and the bonds might be presented for payment at maturity or for prior redemption were specified.

■■■ The bonds were payable to bearer and negotiable, which made it impossible for the City to know by whom they were held or the addresses of any such persons. Also, the bonds subject to call for prior redemption contained no provision or direction respecting the method or manner in which the authorized call should be made or how notice of such call should be given. Notwithstanding, the purchaser and all holders of the bonds were put upon notice

by their provisions that they were subject to call for prior redemption on and after a day certain. This clear notice imposed a positive duty upon each and every holder of those outstanding bonds to be alert to the possibility that the City would exercise its right to call such bonds for prior redemption either on the date specified in the bonds or thereafter and for them to continue to ascertain from time to time whether such later call was made.

■■■ The law is almost elementary that whatever puts a party on inquiry amounts to "notice." 28A Words and Phrases, Notice (Perm.Ed.), commencing at page 500, lists a great number of cases containing holdings to this effect.

In 1 Jones, Law of Bonds and Bond Securities, § 445, p. 479 (4 Ed.), it is said:

" * * * If the bonds contain upon their face an option in favor of the municipality to redeem them at a time in advance of their ultimate maturity, such option is a part of the contract between the parties and the corporation has the right to exercise it upon the terms and at the time stated in the instrument * * * [Hinds County v. National Life Ins. Co., 104 Miss. 104, 61 So. 164, 43 L.R.A.,N.S. 1146 and note]. Moreover, one purchasing an interest coupon attached to a bond on the face of which such an option appears is charged with knowledge of the provision permitting redemption, and if his purchase was after the time when the redemption could have been made, the duty was placed upon him to ascertain whether the option had been exercised so as to cause the interest on the bond to cease. [Fulton Nat. Bank v. Lancaster, 112 Pa. Super.Ct. 565, 172 A. 34] * * *."

■■■ Where the bonds contain a provision permitting prior redemption, in the absence of any direction in the bonds themselves or in the refunding proceedings that notice is to be given the bondholders of a call for prior redemption, no such notice is required. Where as in this instance the bonds to be priorly redeemed do contain a provision permitting that to be done and

in the refunding proceedings a specific designation is made how notice of such prior redemption is to be given, that method of giving notice may be followed. The law never requires the impossible (Lex Non Cogit Ad Impossibilia), and it also recognizes the impracticable (Cessante Ratione Legis Cessat Ipsa Lex). Reason is the soul of law, and when the reason of any particular law ceases so does the law itself, and it frequently is said in cases where notice is required that such notice may be " 'suitable to the case.' " Commonwealth ex rel. McIver v. Central Dist. Telephone Co., 243 Pa. 586, 90 A. 338, 340, and that which " 'may fairly and properly be expected or required in the particular circumstances,' " Baker v. Baker, Mo.App., 274 S.W.2d 322, 326; State ex rel. Murphy v. Aronson, Mo.App., 330 S.W.2d 140, 144, 146. Under the circumstances in this case where the City has no way of ascertaining the names or addresses of its bondholders, it is wholly impracticable if not in many instances impossible to give personal notice to the bond owner. Under such a circumstance a usual and a reasonable way to give the notice is by some kind of publication. See Philadelphia Sav. Fund Soc. v. City of Bethlehem, 143 Pa. Super. 449, 17 A.2d 750, 753–755; State v. City of Tallahassee, 126 Fla. 275, 170 So. 897; Stewart v. Henry County, C.C., 66 F. 127, 129. Here the means adopted was not merely to publish in the locale of the City by publication in "The Wyoming Eagle," a newspaper published and of general circulation in the County of Laramie and State of Wyoming, in which the City is located, but to additionally publish the notice in "The Bond Buyer," a newspaper published and of general circulation in the City of New York, New York, a principal money mart of this country, and send the notice by registered mail, postage prepaid, to important financial institutions throughout the nation, many of which were banks authorized for payment of interest accruals and ultimate payment at maturity of the bonds.

▇▇▇ We therefore conclude that, even absent any notice of prior redemption, it was the duty of a bondholder to be alert to the City's right to call for prior redemption on and after the specified date its bonds which contained a provision for prior redemption, and therefore no such notice was required. In addition, the notice prescribed in the refunding proceedings was ample and sufficient under the circumstances and personal notice was not required as an incident of due process. See further Annotation, 109 A.L.R. 999–1001; 43 Am.Jur., Public Securities and Obligations, § 270, pp. 480–481; 64 C.J.S. Municipal Corporations § 1954, p. 591. We expressly reject the holding in Hinds County v. National Life Ins. Co., 104 Miss. 104, 61 So. 164, 43 L.R.A.,N.S., 1146 (1913), cited by appellant, that "in the absence of a performance of some statutory method of constructive notice, the holders of the bonds must have had actual notice before interest could be stopped," as well as Berkey v. Board of Com'rs of Pueblo County, 48 Colo. 104, 110 P. 197 (1910), and similar holdings.

Another citation of appellant, Ridenour v. County of Bay, 366 Mich. 225, 114 N.W. 2d 172, 180, does not cover the circumstances present here for it holds a statute unconstitutional which provides for service by publication upon parties who are known.

Mullane, Special Guardian v. Central Hanover Bank & Trust Co., 339 U.S. 306, 312–318, 70 S.Ct. 652, 94 L.Ed. 865 (1950), relied on by appellant says explicitly, 339 U.S. at 317, 70 S.Ct. at 658, "This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases [of which the present case is one] where it is not reasonably possible or *practicable* to give more adequate warning." (Emphasis supplied.)

*Objection Nos. 2 and 3:*

Objection No. 2 is sufficiently dealt with in our discussion of constitutionality of the payment of $79,285.50 from proceeds of the refunding securities.

Objection No. 3 is also disposed of in a similar manner.

*Objection No. 4:*

██ In Anselmi v. City of Rock Springs, 53 Wyo. 223, 227–228, 80 P.2d 419, 420, 116 A.L.R. 1250, this Court construed § 5, Art. 16, Wyo.Const., which provided:

"No city, town or village, or any sub-division thereof, or any sub-division of any county of the state of Wyoming, shall, in any manner, create any indebtedness exceeding 2 per centum on the assessed value of the taxable property therein; provided, however, that any city, town or village may be authorized to create an additional indebtedness, not exceeding 4 per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment, for the purpose of building sewerage therein; * * *"

as meaning that the additional 4 percent allowed applied to the building of storm sewers as well as to sanitary sewers. In 1962, the proviso of this section of the Constitution was amended to read, "except that an additional indebtedness of four per cent (4%) of the assessed value of the taxable property therein may be created for *sewage disposal systems.*" (Emphasis supplied.)

Appellant says this substitution of the words "sewage disposal systems" for the words *"for the purpose of building sewerage"* now obviates reliance on the Anselmi pronouncement and cites Cheltenham & Abington Sewerage Co. v. Public Service Commission of Pennsylvania, 107 Pa.Super. 225, 162 A. 469, 473, affirmed 311 Pa. 175, 166 A. 649, saying that a conveyance of a sewage plant and system included the sewage disposal plant and sanitary sewer connected therewith but did not include the storm water system.

We find nothing in the 1962 amendment which justifies appellant's contention, nor do we consider the Pennsylvania case of sufficient purport to warrant acceptance of its pronouncements in the face of what has previously been announced by this court.

It is true that in Banner v. City of Laramie, 74 Wyo. 429, 450, 289 P.2d 922, 930,

we said, "A storm sewer is an incidental part of improving streets," but that observation does not change or modify what we also said in Anselmi v. City of Rock Springs, supra, which was that, 80 P.2d at 422:

"* * * the term 'sewer' included a storm sewer as well as a sanitary sewer. And bearing in mind that storm sewers may subserve the purposes of health as well as sanitary sewers, we think that under the foregoing authorities we are constrained to hold that they were included within the constitutional and statutory provisions above mentioned * * *."

Additionally it was said in Anselmi, 80 P.2d at 422:

"* * * we are unable to say that the term 'sewer' does not include a storm sewer as well as a sanitary sewer, unless we find something in the constitution or the statutes of this state which would limit the term to sanitary sewers. But we find nothing of the kind. * * *"

Certainly the 1962 constitutional amendment gives no intimation of an intention or purpose to limit the term sanitary sewers so as to exclude storm sewers which had already been interpreted by this court as being within the term "sewer."

The 1962 amendment does not exclude storm sewers from the additional bonded indebtedness allowance of 4 percent of the City's taxable property.

*Objection No. 5:*

██ This objection is based in the premise that the refunding bonds bear an interest rate higher than that provided by certain of the outstanding issues but it fails entirely to take into account that not only is the interest rate on other of the refunded items higher than that of the refunding bonds, but it ignores the fact the interest increment from the federal securities to be purchased with proceeds from the sale of the refunding issues, being tax free, will result in an over-all saving to the City of over two million dollars.

It is an illogical and unjustified assumption that low interest bonds should be isolated from the high interest obligations of the City, and the interim earnings of the federal securities purchased with proceeds of the refunding bonds be disregarded in computing or ascertaining the financial advantage to the City of the refunding program. We find there is nothing in the Constitution of this State that precludes or prohibits a municipality from capitalizing upon a fortuitous circumstance which enables the City to improve its financial position. The legislature of this State has given its approval to this refinancing program, and we find no legal reason why our approval should be withheld on the ground some of the refunded bonds bear a smaller rate of interest while the over-all plan results in a net interest saving to the taxpayers.

We find appellant's suggestion that taxpayers will be compelled to pay a higher rate of interest is completely without merit, either in fact or in theory and that the cited case of Kansas City Life Ins. Co. v. Evangeline Parish School Board, D.C., 58 F.Supp. 39, 43, 47, affirmed 5 Cir., 153 F.2d 611, 612, to have no bearing under the circumstances present here, and the same is true of Martin v. Mayor & Board of Aldermen of Town of Westwego, 212 La. 439, 32 So.2d 711.

*Objection No. 6:*

The simplest answer to this objection is that the refunding statute expressly authorizes the procedure by which the present and future officials will be bound, and there is no constitutional inhibition curtailing the legislative authority to do so. That discretionary authority to bind their successors is given the current city officials and is evidently conceded by appellants, but that its exercise is arbitrary is claimed. This position entirely disregards the fact that by their vote the city electors have irrevocably bound the City to pay the principal and interest of the outstanding bonds and all city officials, both current and future, are equally bound to make provision for their payment, although the period of such payments perforce extends over many years. This left the action of the city officials under the refunding program no alternative but to make the period of repayment of the refunding issues co-extensive to that assumed by the taxpayers in their authorization of the original bonds for which the new bonds will be substituted. Although we will not quarrel with appellant's characterization of the city officials' acts as being discretionary, there is little if any discretion left to them to exercise. We consider this Objection No. 6 to be without merit and for the reason first stated here the authorities cited by appellant are inapplicable because the city officials have been authorized to bind their successors.

*Objection No. 7:*

This objection is predicated in part upon the direction of § 7, Art. 15, Wyo.Const., that all money belonging to the City except as therein provided shall *whenever practicable* be *deposited* in certain banks which shall furnish security and pay interest. It is also claimed that § 9–591, W.S.1957, and §§ 9–609 and 9–610, W.S.1957, have not been complied with.

These objections may be resolved by a determination of the character of the transaction by virtue of which the proceeds of the sale of the refunding bonds are to come into the possession of the designated bank. The primary and controlling factor affecting this determination is the intention of the concerned parties, in this case the City and the designated bank. 10 Am.Jur.2d, Banks, § 363, p. 323. That intention here is not left in doubt. It is clearly and definitely expressed in the terms of the escrow agreement. It specifically provides that the proceeds of the refunding bond sales are placed with the bank as escrow party for the purpose of paying accruing interest and redeeming the outstanding bonds. It delimits any control over those funds or securities purchased with them by either the City or the bank and leaves them in trust in the custody only

of the bank for application to restricted purposes. See 10 Am.Jur.2d, Banks, § 342, p. 307, and Brown v. J. P. Morgan & Co., 265 App.Div. 631, 40 N.Y.S.2d 229, affirmed 295 N.Y. 867, 67 N.E.2d 263. The bank acquired no authority to use the funds except to apply them for the prescribed purposes and was specifically enjoined not to commingle them with its owned or other funds. See 10 Am.Jur.2d, Banks, § 341, p. 305, and voluminous authorities cited thereunder. The bank's authority to so receive the funds and the securities directed to be purchased with them is within the powers possessed by the bank as a trust institution. See 10 Am.Jur.2d, Banks, § 362, p. 322. When funds are so received with directions as to how and when they are to be disbursed, the deposit is for a specific purpose, 9 C.J.S. Banks and Banking § 275, p. 574, and they are trust funds and not subject to commingling or set off by the bank. 9 C.J.S. Banks and Banking § 304, p. 632. If more were needed to indicate the nature of the transaction, the statute's requirement that the funds be placed in escrow with a bank having trust powers would seem to conclude the matter. In consequence we must hold that the escrow was not such a deposit of public moneys as comes within the purview of §§ 9–591, 9–606, 9–607, 9–609, or 9–610, W.S.1957.

 The suggestion that an obstacle would occur should the designated bank fail is without merit. As in any other trust situation, neither the law nor the courts would allow the trust to fail, but a substitute trustee would be provided. In 90 C.J.S. Trusts § 217a., p. 152, it is said:

"* * * The exercise of the court's power to appoint new trustees is not, however, limited to cases in which there is no trustee to execute the trust, but in its discretion the court has the right to exercise such power whenever the circumstances of each particular case seem to require its intervention,"

and, 90 C.J.S. Trusts § 217d., p. 157, "A court of equity or its equivalent may and ordinarily will appoint a trustee * * *

where there is a vacancy in the trusteeship and the creator of the trust has made no provision for filling it," both statements being well supported by authorities therein cited. Similarly, 54 Am.Jur., Trusts, § 122, p. 106, says:

"It is a general rule that a trust will never fail for want of a trustee, and a court of equity will always appoint a trustee where necessary to the administration of a trust or to prevent failure of the trust, whether the necessity arises from failure of appointment, from nonacceptance or disqualification of a trustee, or from other cause; or the court will execute the trust by its officers or otherwise effect its accomplishment, * * *"

supporting this statement with a host of acceptable authority.

Contrary to appellant's contention, City of Casper v. Joyce, 54 Wyo. 198, 88 P.2d 467, lends considerable support to the City's position in this case as that lawsuit was concerned with the question of whether this State's depository laws were violated by a city treasurer depositing, in a non-designated banking house, city funds without exacting security therefor, and without receiving interest increment, but for the special purpose of providing such banking house with funds with which to pay interest coupons of the city's outstanding bonds as they became due. This court's holding was definite and positive that this State's Depository Act was not intended to interfere with the power of the city to so contract.

*Objection No. 8:*

 The City's adopted refunding plan is a far reach from the charge that the City is thereby using public funds in an investment business. Appellant claims that the criticized 1965 Act and Ordinance No. 1491 authorizing the City to borrow money for the purpose of entering into the investment business is a perversion of both the purpose and the effect of that law. The use of proceeds from sale of the refunding bonds to purchase advantageous federal securities during the enforced period during which such fund cannot be immediately ap-

plied to their intended purpose, while in fact an investment, does not serve to place the City in the investment business, but is a mere expedient to make the best use of idle funds which must be kept safe and intact until they can be applied to the purpose for which they were obtained. Furthermore, such action is in line and in accord with the legislative intent in authorizing, nay in requiring, that ordinary, general deposit of public surplus funds be kept on interest when not currently needed to defray expenses. We, therefore, hold that the provisions respecting the purchase of federal securities with idle proceeds from the refunding bonds do not place the City in the investment business.

*Objection No. 9:*

■ Although this decision will uphold the constitutionality and validity of the entire law and Ordinance No. 1491, as well as the escrow agreement, it is not amiss to say that under previous rulings of this court, where some parts of a statute are found to be unconstitutional or otherwise illegal, that fact does not require that all parts of the law must necessarily be stricken if the proper portions are sufficient in themselves to accomplish the legislative purpose. This objection is overruled.

*Objection No. 10:*

As this objection is repetitious of matters set forth under other objections, it has been sufficiently discussed, and the same is overruled.

*Objection No. 11:*

■ The absence of specific statutory authority to authorize and issue refunding bonds in four series is entirely immaterial.

*CONCLUSION:*

With respect to the constitutional questions submitted by the district court, the following answers are given:

Question No. 1—Yes;

Question No. 2—No;

Question No. 3—Yes;

Question No. 4—No;

 Question No. 4a—No;

 Question No. 4b——No;

 Question No. 4c—No;

Question No. 5—Yes.

The objections raised upon appeal from the findings and decision of the district court are overruled and the lower court's judgment respecting the same is affirmed.

Constitutional questions answered and the district court's findings and judgment affirmed.